IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANNIE HINSON, *et al.,* | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    CASE NO. 2:03-CV-97-WKW |
| | ) |
| OFFICER CHRISTOPHER WEST, *et al.,* | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Annie Mae Hinson[1] and Annie Francis Bradley (hereinafter collectively referred to as "Plaintiffs") bring this civil rights action against defendants Officer Christopher West ("West") and the Second Judicial Circuit Drug Task Force ("Task Force") alleging violations of their constitutional rights secured by the Fourth, Sixth, and Fourteenth Amendments. Specifically, Plaintiffs sue under 42 U.S.C. § 1983 alleging an illegal search, excessive force, and false imprisonment. Plaintiffs also bring a state law claim of assault and battery against the defendants, and seek equitable relief.

This action is presently before the Court on West's motion to dismiss the amended complaint (Doc. # 24). For the reasons that follow, the Court concludes that the motion is due to be granted in part and denied in part.

---

[1] Annie Mae Hinson died on August 16, 2005. The Court has granted a motion to substitute the decedent's husband, Henry Lee Hinson, the administrator of the estate of Mrs. Hinson, as a party plaintiff to this action (Doc. # 42).

## I. FACTS[2] AND PROCEDURAL HISTORY

This action stems from events which occurred during a drug raid conducted by West and other members of the Task Force on November 9, 2001. According to the amended complaint, around 8:30 a.m., the Task Force, which included West and approximately twenty other officers, converged on the premises of Annie Mae Hinson ("Hinson"). Without signaling his presence, West forcefully opened the door to Hinson's home and entered, announcing that he was conducting a search of the property. Upon entering the home, West discovered Plaintiffs, two disabled women, sitting in the living room. West ordered Hinson, the more elderly woman, to stand and placed handcuffs on her wrists. Immediately thereafter, West turned to Annie Francis Bradley ("Bradley"), who was seated with oxygen tubes in her nostrils and an oxygen tank beside her chair, and forcefully removed the oxygen tubes from Bradley's body. West then required Bradley to position herself in a manner which allowed him to place handcuffs on her wrists. According to Plaintiffs, they remained in handcuffs until the search of the property was concluded, which took approximately two hours. Although this search did not produce incriminating evidence or charges against Plaintiffs, their detention during the search resulted in various injuries to them.[3]

On January 30, 2003, Plaintiffs commenced this action against West in his individual capacity and the Task Force. On September 30, 2004, this Court granted in part a motion to dismiss filed by West but allowed Plaintiffs to file an amended complaint to correct pleading deficiencies.

---

[2] For purposes of the motion to dismiss, the Court presumes that the allegations in the amended complaint are true.

[3] Hinson alleged that she had a permanent draft placed in her arm for thrice-weekly dialysis treatments; that the pressure from the handcuffs destroyed her dialysis draft; and that two emergency operations were required to save her life. (Am. Compl. ¶¶ 11, 13, 18.) Bradley alleges that she was deprived of "desperately needed oxygen" during the search of the property. *(Id.* at ¶ 14.)

Plaintiffs seek a jury trial, equitable relief, attorney fees, costs, and compensatory and punitive damages. West moves to dismiss the case for failure of the plaintiffs to meet the heightened pleading standard for section 1983 cases and on the basis of qualified immunity. West also claims absolute immunity with respect to the state law claims.

## II.  JURISDICTION AND VENUE

The parties have not disputed that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343(4), and 1367. There is no dispute over personal jurisdiction or venue.

## III.  STANDARD OF REVIEW

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and reasonable inferences drawn from those facts, and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73; *see also Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). Ordinarily, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). However, in cases brought under 42 U.S.C. § 1983 against deputy sheriffs in Alabama, when qualified immunity is an issue, the threshold with respect to pleading is high. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001), *implicitly modified by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also GJR Invs., Inc. v. County*

*of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity.").

## IV.  DISCUSSION

At the outset, the Court acknowledges West's representation that the Second Judicial Circuit Drug Task Force is not a legal entity under Alabama law. Plaintiffs have not contested this assertion. According to West, the Task Force is comprised of deputy sheriffs from Lowndes and Crenshaw Counties, as well as police officers from police departments within those counties. (West's Br. 1.) Under Alabama law, neither a sheriff's department nor a municipal police department is a legal entity that may sue or be sued. *See Dean v. Barbour*, 951 F.2d 1210, 1214 (11th Cir. 1992). Accordingly, because the Task Force is not a legal entity, it is due to be dismissed from this action.

In addition, West argues that Plaintiffs' claim for equitable relief should be dismissed. In regard to equitable relief, Plaintiffs seek a declaratory judgment[4] on the basis of an inadequate remedy at law. The Court finds damages an adequate remedy. The motion to dismiss as to the claim for equitable relief is due to be granted.

As to the remaining claims, West argues that they are subject to dismissal because he is entitled to immunity. Specifically, West contends that he is entitled to sovereign immunity on Plaintiffs' state law claims and qualified immunity on Plaintiffs' section 1983 claims.

### A.  State Law Claims

On September 30, 2004, this Court dismissed Plaintiffs' state law claims raised in the initial complaint on sovereign immunity grounds; however, the claims resurfaced in the amended complaint. The law of sovereign immunity for deputy sheriffs in Alabama has not changed, nor has

---

[4] Plaintiffs do not specifically request injunctive relief.

the law of this case changed, since the previous dismissal of these claims. Accordingly, the state law claims of assault and battery and false imprisonment are due to be dismissed with prejudice on the grounds previously expressed by this Court.[5]

### B. Section 1983 Claims

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath, or affirmation, and particularly describing the place to be searched and persons or things to be seized." Plaintiffs advance two claims under the Fourth Amendment. First, they claim that the search was carried out without a valid search warrant. Second, they allege that the force used against them during the search was unreasonable and excessive.

*1.  The Warrant*

Plaintiffs assert that the search warrant was not valid because it was not based upon probable cause and was not supported by oath or affirmation. (Am. Compl. ¶ 20.)  In response, West produced a copy of the warrant with affidavit, requesting the Court to take judicial notice of it. Plaintiffs object to the Court taking judicial notice of the warrant, and maintain that the warrant is based upon the hearsay testimony of an unreliable informant.

The validity of the warrant has large implications in the analysis of the search based upon it. "Because the right of a man to retreat into one's own home and there be free from unreasonable governmental intrusion stands at the very core of the Fourth Amendment . . . searches and seizures

---

[5] Although false imprisonment is listed in the "federal claims" section of the amended complaint, Plaintiffs seem to argue that it is a cause of action under state law. (Pls.' Br. 14.)  To the extent Plaintiffs seek to advance a state law claim for false imprisonment, said claim is dismissed.

inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks and citations omitted). The validity of the warrant is of ultimate significance in the illegal search claim.

At the pre-evidentiary stage of these proceedings, the Court must assume that Plaintiffs' allegations with respect to the warrant are true. Although the allegations may ultimately be proved wrong, evidence could develop that places the validity of the warrant in material dispute. Accordingly, the Court will not take judicial notice of the warrant that West alleges to be valid and concludes, as it must, that West proceeded without a valid search warrant. The claim of an unconstitutional warrantless search may proceed.

2. *Excessive Force*

Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court looks to whether the defendant officer's conduct was objectively reasonable in light of facts confronting the officer. *Id*. at 394-95; *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). The relevant inquiry is whether a reasonable law enforcement officer would have believed that the level of force used was necessary given the situation. *Vinyard,* 311 F.3d at 1347. In *Michigan v. Summers*, 452 U.S. 692 (1981), the Supreme Court wrote:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

*Id*. at 700 n.11 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)) (citations omitted).

Given the facts alleged in the amended complaint, and construing the facts in the light most favorable to the Plaintiffs, West and others entered the home of Hinson without a valid search warrant.[6] West was immediately confronted with an elderly woman and an obviously infirm younger woman, both of whom were obese and neither of whom had a weapon in plain view or posed any other threat or resistance to West. The Plaintiffs allege they were physically unable to flee or threaten the officers. Hinson, a dialysis patient, was required by West to stand, to be handcuffed, and to remain handcuffed for approximately two hours. Her dialysis draft was damaged by the handcuffing, and she required two emergency surgeries to save her life. Bradley alleges that her required oxygen was forcibly denied to her for approximately two hours by West "yanking" her oxygen tubes from her nose and handcuffing her. Both women cooperated with the search. Both pleaded with West to remove the handcuffs, but he refused. Hinson complained of pain and Bradley complained of not being able to breathe properly. West ignored their pleas.

West relies on language in *Summers*, 452 U.S. at 702-03, that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." (West's Br. 9.) The issue raised by the Plaintiffs, however, is not whether the situation was under the "command" of the officers, but whether the force used to exercise "command" of the situation was justified by the circumstances or was excessive. The Court in *Summers* recognized that "special circumstances, or

---

[6] Neither Plaintiff was the subject of the warrant, nor were they named in the warrant. The home of Hinson, however, was identified in the warrant as the location of contraband.

7

possibly a prolonged detention . . . in an unusual case" might lead to a conclusion that the officer did not have the authority to detain the occupants of the premises while the search was conducted. *Summers*, 452 U.S. at 705 n.21. Plaintiffs do not challenge West's authority to detain them in the excessive force claim, but rather the amount and duration of force used. Plaintiffs have alleged significant "special circumstances," i.e., their poor health conditions and obvious lack of mobility, as indicators that they posed no threat to the officers, and they have also alleged a timeframe which could be considered by a jury to be a prolonged detention.

Moreover, the use of handcuffs must be justified by the circumstances. *See United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989). In an attempt to justify his actions, West insists that if the Plaintiffs could use their hands, they could fire a gun, and if they could stand, they could retrieve a gun or attempt to obtain and destroy evidence. (West's Br. 9.) In his brief, he asserts that "[n]either woman was found lying in a bed unable to move at all." (*Id.*) In view of the circumstances of this case, this Court declines to apply a standard which requires innocent occupants of and visitors to a home to be bedridden paralytics in order for the use of handcuffs to be considered excessive force. With approximately twenty officers on the scene, a jury could find that West could have been less intrusive in restraining the Plaintiffs while maintaining full control of the situation.

West argues that *Muehler v. Mena*, 544 U.S. 93 (2005), stands for the proposition "that once a neutral magistrate has determined probable cause exists, the connection of the occupant to the property alone justifies his or her detention." (West's Suppl. Br. 4.) The *Muehler* Court recites three legitimate law enforcement interests that provide substantial justification for detaining an occupant: (1) preventing flight in the event incriminating evidence is found; (2) minimizing the risk of harm to officers and occupants; and (3) facilitating the orderly completion of the search. *Id.* at 98. The

8

Court held: "The imposition of correctly applied handcuffs on Mena, who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to detention . . . . The detention was thus more intrusive. . . ." *Id*. at 99. However, the Supreme Court noted that "this was no ordinary search" because the police had reason to believe at least one armed and dangerous member of a gang lived on the premises. *Id*. at 100. As a result, the search warrant obtained was broad:

> [The warrant] authorized a broad search of the house and premises for, among other things, deadly weapons and evidence of gang membership. In light of the high degree of risk involved in searching a house suspected of housing at least one, and perhaps multiple, armed gang members, a Special Weapons and Tactics (SWAT) team was used to secure the residence and grounds before the search.

*Id*. at 95-96.

On a scale of dangerousness, and certainly not to minimize potential risks to officers in searches for weapons and drug paraphernalia, the method and duration of force used against these infirm plaintiffs was certainly at the opposite end of the spectrum from that in *Muehler*. Distinctives here include physically disabled detainees, a rural Alabama setting, absence of gang and violence allegations in support of the warrant, age of one detainee, and duration of detention.[7]  Balancing the interests of the government against the alleged intrusion on the citizens in this case, a jury could find that the force used by West was far more intrusive than necessary and clearly excessive.

West also contends that the force used against Bradley, taking all allegations as true, can "only be characterized as *de minimis* in nature." *(*West's Br. 10.)  This Court cannot say that the allegation of having an oxygen tube "yanked" from the nostrils of a person who requires oxygen

---

[7] The *Meuhler* court also noted that "the duration of a detention can, of course, affect the balance of interests under *Graham*." *Muehler,* 544 U.S. at 100.

results in no injury. The act speaks for itself. Bradley alleges she was deprived of "desperately needed oxygen" (Am. Compl. ¶ 14), and that she "was forced to struggle for air for the duration of the search . . . ." (*Id*. ¶ 18.). Before this Court will conclude that Bradley's injuries are *de minimis,* Bradley certainly is entitled to give evidence as to the extent of her injuries.

West's arguments are wholly unpersuasive on the issue of the sufficiency of the pleadings of Fourth Amendment violations in the amended complaint. For the foregoing reasons, the Court finds that a constitutional violation has been adequately pleaded under the Eleventh Circuit heightened pleading standard.

### C. Qualified Immunity

The qualified immunity defense requires an analysis distinct from that of the alleged constitutional violation. It is possible for Plaintiffs to adequately plead a constitutional violation but still lose on qualified immunity. *See Marsh*, 268 F.3d at 1030. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard,* 311 F.3d at 1346 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The official is entitled to "fair warning" that his conduct deprives a person of a constitutional right. *Id.* at 1350.

The qualified immunity analysis consists of three steps: First, the public official must have been acting within the scope of his or her discretionary authority; second, the official's acts must have violated a constitutional right of the Plaintiffs; and third, that constitutional right must have been clearly established at the time of the violation. *Vinyard*, 311 F.3d at 1346-47. The parties do not dispute that West was acting within the line and scope of his discretionary authority. As

explained above, the violation of a constitutional right has been adequately alleged by the Plaintiffs in satisfaction of the second step. The final step, that this constitutional right was clearly established at the time of the violation, requires further discussion.

In excessive force cases, there are two ways to show that the law clearly established that a particular amount of force was excessive. As explained in *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002):

> The first is to point to a materially similar case that has already decided that what the police officer was doing was unlawful. Because identifying factually similar cases may be difficult in the excessive force context, we have recognized a narrow exception also allowing parties to show that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law. Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and our own case law inevitably lead every reasonable officer in the defendant's position to conclude the force was unlawful.

*Id.* at 1198-99 (internal quotation marks and citations omitted). Since *Hope v. Pelzer*, 536 U.S. 730 (2002), the qualified immunity doctrine has been more susceptible to rejection by courts in novel factual situations. Fair warning can be established from the egregious nature of the acts themselves. These "obvious clarity" cases involve conduct "far beyond the hazy border between excessive and acceptable force." *Vinyard*, 311 F.3d at 1350 n.18 (quoting *Smith v. Maddox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). This Court finds that the conduct alleged by Plaintiffs is so egregious as to violate the Fourth Amendment on its face; every reasonable officer in West's position would conclude the force used against the Plaintiffs, when considering the totality of the circumstances, was unlawful. Accordingly, West is not entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. Defendant West's motion to dismiss (Doc. #24) as to all state law claims against him is GRANTED.

2. Defendant West's motion to dismiss (Doc. #24) as to the section 1983 claims is DENIED.

3. All claims against Defendant Second Judicial Circuit Drug Task Force are dismissed with prejudice.

4. All claims for equitable relief are dismissed with prejudice.

Done this the 26th day of May, 2006.

                                              /s/   W. Keith Watkins
                                        UNITED STATES DISTRICT JUDGE